### PEOPLE v. REGAN.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

HOMICIDE—SELF-DEFENSE—DEFENSE OF ANOTHER.
  Evidence that defendant, while accompanying his sister, engaged in an altercation with deceased, who was hostile towards defendant's sister, during which he wrested a pistol from deceased, and, some time after this altercation had ceased, shot deceased while neither defendant nor his sister were in a perilous situation from which they could not have escaped, but after deceased had thrown some stones at defendant, was insufficient to present the defense of justifiable homicide, under Pen. Code, § 205, declaring homicide justifiable when committed in the lawful defense of the slayer or of another, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or the other, and there is imminent danger of such design being accomplished.

Appeal from Trial Term, New York County.

Martin Regan was convicted of murder in the second degree, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

S. J. O'Hare, for appellant.
R. C. Taylor, for the People.

PATTERSON, J. The defendant was indicted for the crime of murder in the first degree. On the trial he was convicted of murder in the second degree. The evidence shows that on the night of the 26th of October, 1899, he shot Francis E. Slater, who died on the 31st of October, in the same year, from the wound he had received. It was urged in defense that the homicide was justifiable; that the defendant discharged the pistol in dread of physical harm being inflicted upon him by the deceased, or in an effort to protect a sister from violence which the defendant apprehended the deceased might inflict upon her.

The record, as it is presented to us on this appeal, fully justifies the verdict of the jury, and conclusively shows, on the defendant's own narrative of the circumstances attending the commissions of the act, that he was guilty of the crime of murder. That the defendant fired the shot is admitted, and that the deceased died from the effects of the wound inflicted upon him is also admitted. The facts proven are the following: The defendant was the brother-in-law of Francis E. Slater, referred to in the record at times as Edward Slater. The relations existing between Slater and his wife, the sister of the defendant, were unfriendly. There can be no doubt, on the evidence, that Slater abused and maltreated his wife, and they were living separately and apart. Mrs. Slater was a member of a theatrical company, and as such was engaged at a theater in Brooklyn. Her husband, the deceased, was haunting the theater, and undoubtedly had made threats against her, and also against the defendant. That hostile relations existed between the deceased and his wife, and that the defendant in some way associated himself with those relations, is clear; but, on the whole testimony, it is apparent that there was nothing in such relations to impel the defendant to resort to violence towards the deceased before the night of the occurrence which resulted in Slater's death. For all the purposes of this case, it is only necessary to take into consideration the incidents as they occurred on that night. It is shown that then the defendant went to Brooklyn to take his sister home after the conclusion of a performance in which she took part as an actress. He met her at the stage door of the theater, and they went to the Twenty-Third Street Ferry. Before the parties left Brooklyn, an altercation took place between the defendant and Slater. The latter produced a pistol, which was wrested from him by the defendant, and it was from that pistol that the fatal shot was discharged in New York. The deceased was on the same ferryboat on which the defendant crossed, and kept walking back and forth, with his hands in his pockets, while the boat was crossing the river. There is nothing in the evidence to indicate that the deceased showed any violence either towards the defendant or Mrs. Slater while the ferryboat was in transit, but after it reached the New York side the deceased took some stones from his pocket and threw them at the defendant. Those stones were picked up on the New York side, and

after they were thrown a pistol in the hands of the defendant was discharged, and the deceased received the wound from which he died. A careful reading of the record in the case discloses that when the shot was fired the defendant had no reason whatever to apprehend any violence of the deceased towards Mrs. Slater. When the parties left the boat on its arrival at the New York side of the ferry, according to the statement of the defendant himself, Slater and his wife were behind him. He neither saw nor had reason to apprehend that an attempt would be made by the deceased to harm Mrs. Slater; nor does her testimony, or that of the witnesses on behalf of the defendant, indicate in any way that she was in peril from any act or apprehended act of her husband. She says she anticipated some difficulty with her husband, but she pushed him to the side of the street when he began to throw stones at her brother. There is not one word of evidence to indicate that Mrs. Slater had reason to apprehend, or that the defendant had reason to apprehend, that she was in peril. So far, therefore, as a defense of justifiable homicide, based upon section 205 of the Penal Code, is concerned, there is nothing in the case that would authorize a jury even to consider that question. That section provides that homicide is justifiable when committed either in the lawful defense of the slayer, or of his or her husband, wife, parent, child, brother, sister, master, or servant, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished. Here it is manifest that there was no imminent danger of a design being executed by the deceased to inflict harm upon the defendant's sister. On the contrary, the evidence shows that she had no apprehension of that character, and it is quite apparent that the defendant could not have apprehended it, for he knew nothing of what was transpiring between the deceased and Mrs. Slater; he (the defendant) being much in advance of them at the time the fatal shot was discharged. So far as his being in peril himself is concerned, there is no evidence to show that he was in a perilous situation from which he could not escape. The facts, as proven, even on the defendant's own statement, are that the deceased, who was walking some feet behind him, took from his pocket some stones and threw them at the defendant, who was not struck by them. The defendant says that he apprehended the deceased had another pistol than the one which he (the defendant) had taken from him in Brooklyn, but there is nothing to show that such apprehension had any foundation whatever. The defendant was assailed by the throwing of missiles, not by the use of a pistol; and, from his own account of the situation in which he stood to the deceased, it is impossible that he could have had ground for apprehending that the deceased had another pistol than the one which had been taken from him.

The jury were justified in finding that, from anger and passion arising from the throwing of the stones, the defendant discharged the pistol upon the body of the deceased. He may have been in

part affected by the antecedent relations existing between him and his brother-in-law, but it is evident upon the whole testimony that he could have escaped and got beyond the reach of harm from the deceased if he had chosen so to do. On the evidence the jury might well have found a verdict of murder in the first degree, but as they undoubtedly regarded the defendant's act as one committed under the impulse of passion, without a premeditated design to commit murder, they gave him the benefit of the doubt, and convicted him of a lesser crime. It is plain that the defendant could have escaped injury; that he was not personally in peril; that his act was not in defense of an imperiled sister; and the judgment therefore should be affirmed.

INGRAHAM and HATCH, JJ., concur. McLAUGHLIN, J., concurs in result.

O'BRIEN, P. J. I concur in the result, but not in the reasoning of the opinion. The facts warranted the submission of the question as to whether or not the shooting was justifiable, and, had the jury found for defendant, I should not have regarded the verdict as against the weight of evidence. The defendant was engaged in protecting his sister. Whilst so engaged he was attacked at the theater on the very evening in question by the deceased, who had with him and who attempted to use a revolver, which defendant, in the struggle, wrested from him. After the theater, on reaching the city, the deceased had collected some stones, and began throwing them at defendant. Was he to run away and leave his sister unprotected, or was he not justified in believing that if he remained the deceased might not, with another revolver which he had or might have procured, be intent on using it, as earlier in the evening he had attempted to do with the one which the defendant had wrested from him? These were questions for the jury. It was within their right and province to determine these questions, and, having resolved them so as to find the defendant guilty of murder in the second degree, I can find no legal ground for assailing this verdict; but had the jury, as intimated in the opinion, found for the higher degree of murder, I am strongly of the opinion that such a verdict could not, on the facts, be sustained.